ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID T. WISSBROECKER (243867)
EDWARD M. GERGOSIAN (105679)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dwissbroecker@rgrdlaw.com
egergosian@rgrdlaw.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BADOLATO, Individually and on Behalf of All Others Similarly Situated and Derivatively on Behalf of ENTROPIC COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MAXLINEAR, INC., EXCALIBUR ACQUISITION CORPORATION, EXCALIBUR SUBSIDIARY, LLC, UMESH PADVAL, THEODORE TEWKSBURY, WILLIAM G. BOCK, KENNETH A. MERCHANT, KEITH E. BECHARD and ROBERT L. BAILEY, <br><br> Defendants, <br><br> – and – <br><br> ENTROPIC COMMUNICATIONS, INC., a Delaware corporation, <br><br> Nominal Party. | No. '15CV0426 BAS JMA <br><br> CLASS AND DERIVATIVE ACTION <br><br> VERIFIED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES <br><br><br><br><br><br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff, by counsel, individually and on behalf of all others similarly situated, respectfully brings this class and derivative action for breach of fiduciary duty against the herein named defendants and alleges the following:

## SUMMARY OF THE ACTION

1.      This is a shareholder action brought by plaintiff: (i) derivatively on behalf of Entropic Communications, Inc. ("Entropic" or the "Company"); and (ii) individually and on behalf of other similarly situated shareholders of Entropic, against the members of Entropic's Board of Directors (the "Board"), MaxLinear, Inc., a Delaware corporation, Excalibur Acquisition Corporation, a Delaware corporation and a wholly-owned subsidiary of MaxLinear, Inc. ("Merger Sub One"), and Excalibur Subsidiary, LLC, a Delaware limited liability company and a wholly-owned subsidiary of MaxLinear, Inc. ("Merger Sub Two" and with MaxLinear, Inc. and Merger Sub One, "MaxLinear"), for breaches of fiduciary duty and/or other violations of state law arising out of defendants' efforts to complete the sale of the Company to MaxLinear, pursuant to an unfair process and for an unfair price (the "Proposed Acquisition"). This matter arises out of the Board's breaches of their fiduciary duties owed to the Company and its stockholders under state law. MaxLinear, Inc., Merger Sub One and Merger Sub Two aided and abetted these breaches of fiduciary duty.

2.      Entropic is a world leader in semiconductor solutions for the connected home. On February 3, 2015, Entropic and MaxLinear announced that they had entered into a definitive merger agreement (the "Merger Agreement") under which Entropic would be acquired by MaxLinear. Under the terms of the Merger Agreement, MaxLinear will acquire the Company in a cash and stock transaction in which the Company's stockholders would receive just $1.20 per share in cash and 0.2200 of a share of MaxLinear, Inc. common stock for each Entropic common share outstanding. Based on the closing price of MaxLinear, Inc. common stock on the day before the deal was announced, the value of the Proposed Acquisition consideration is $3.01 per Entropic share.

3.     The Proposed Acquisition is the result of an unfair sales process designed to ensure that only MaxLinear has the opportunity to acquire Entropic. The Proposed Acquisition is being driven by the Company's Board and management, holders of 4.96% of the Company's outstanding stock. The Board and management sought out the Proposed Acquisition in order to secure increased liquidity for their illiquid holdings in the Company. Moreover, upon consummation of the merger, the size of the MaxLinear board will be increased by one member to seven members, and Theodore Tewksbury ("Tewksbury"), a current member of the Company's Board and the current Interim President and Chief Executive Officer of the Company, will be appointed to the MaxLinear board to fill the newly created vacancy.

4.     The Proposed Acquisition significantly undervalues Entropic. Based on MaxLinear, Inc.'s February 2, 2015 closing price, the Proposed Acquisition consideration is valued at approximately $3.01 per share, well below at least one analyst's estimated value of $5.00 per share, the median analyst price target of $3.81 per share and Entropic common stock's 52-week market price high of $4.80 per share. In fact, Entropic shares traded above the value of the Proposed Acquisition consideration for five years prior to July 2014. The Proposed Acquisition will expand MaxLinear's customer base and allow it to cross-sell various products. As stated in the announcement of the Proposed Acquisition: "The acquisition will add significant scale to MaxLinear's analog/mixed-signal business, expanding its addressable market and enhancing the strategic value of MaxLinear's offerings to its broadband and access partners, OEM customers, and service providers. MaxLinear sees immediate cross-selling opportunities and longer-term platform integration opportunities with Entropic's leading MoCA [Multimedia over Coax Alliance] technology."

5.     The Merger Agreement also includes deal protection devices that will preclude a fair sales process for the Company and lock out competing bidders. These preclusive deal protection devices include:

1    (a)    a "no-solicitation" provision that precludes Entropic from

2 providing confidential Company information to, or even communicating with,

3 potential competing bidders for the Company except under very limited

4 circumstances;

5    (b)    an illusory "fiduciary out" for the No-Shop provision that requires

6 the Company to provide MaxLinear with advance notice before providing any

7 competing bidder with any confidential Company information, even after the Board

8 has determined that the competing bid is reasonably likely to lead to a superior

9 proposal and that the Board is breaching its fiduciary duties by not providing the

10 competing bidder with confidential Company information;

11    (c)    an "information rights" provision that requires the Company to

12 provide MaxLinear with confidential, non-public information about competing

13 proposals which MaxLinear can then use to formulate a matching bid;

14    (d)    a "matching rights" provision that requires Entropic to provide

15 MaxLinear with the opportunity to match any competing proposal; and

16    (e)    a "termination fee" provision that requires Entropic to pay

17 MaxLinear $11.6 million if the Proposed Acquisition is terminated in favor of a

18 superior proposal.

19    6.    In sum, by agreeing to the Proposed Acquisition, each of the defendants

20 has breached their fiduciary duties of loyalty, due care, independence, candor, good

21 faith and fair dealing, and/or has aided and abetted such breaches. Rather than acting

22 in the best interests of the Company's shareholders, defendants spent substantial effort

23 tailoring the structural terms of the Proposed Acquisition to aggrandize their own

24 personal interests and to meet the specific needs of MaxLinear, which efforts will

25 eliminate the equity interest of Entropic's public shareholders.

26    7.    In essence, the Proposed Acquisition is the product of a hopelessly

27 flawed process that was designed to ensure the merger of Entropic with MaxLinear on

28

terms preferential to MaxLinear and defendants, and detrimental to Entropic and its shareholders.  Plaintiff seeks to enjoin the Proposed Acquisition.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(l) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  The Court has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based on the statutory or common law of Delaware, nominal party Entropic's state of incorporation, and thus may be maintained in federal court.

9.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because nominal party Entropic's headquarters are located at 6350 Sequence Drive, San Diego, California 92121, defendant MaxLinear, Inc.'s headquarters are located at 2051 Palomar Airport Road, Carlsbad, California, 92011, and defendants include an officer and/or director who resides in California.

## PARTIES

11.    Plaintiff Anthony Badolato is, and at all times relevant hereto was, a shareholder of Entropic.  Plaintiff is a resident of the State of New York.

12.    Nominal party Entropic is a Delaware corporation headquartered in San Diego, California.

13.    Defendant MaxLinear, Inc. is a Delaware corporation headquartered in Carlsbad, California.  MaxLinear, Inc. is sued herein as an aider and abettor.

14.     Defendant Merger Sub One is a Delaware corporation and a wholly owned subsidiary of MaxLinear, Inc.  Merger Sub One is sued herein as an aider and abettor.

15.     Defendant Merger Sub Two is a Delaware corporation and a wholly owned subsidiary of MaxLinear, Inc.  Merger Sub Two is sued herein as an aider and abettor.

16.     Defendant Umesh Padval is and at all times relevant hereto has been a member and Chairman of the Board.  Defendant Padval is a resident of the State of California.

17.     Defendant Tewksbury is and at all times relevant hereto has been Entropic's Interim President and CEO, and a member of the Board.  Defendant Tewksbury is a resident of the State of California.

18.     Defendant William G. Bock is and at all times relevant hereto has been a member of the Board.  Defendant Bock is a resident of the State of Texas.

19.     Defendant Kenneth A. Merchant is and at all times relevant hereto has been a member of the Board.  Defendant Merchant is a resident of the State of California.

20.     Defendant Keith E. Bechard is and at all times relevant hereto has been a member of the Board.  Defendant Bechard is a resident of the State of Colorado.

21.     Defendant Robert L. Bailey is and at all times relevant hereto has been a member of the Board.  Defendant Bailey is a resident of the State of Washington.

22.     The defendants named above in ¶¶16-21 are sometimes collectively referred to herein as the "Individual Defendants."

**THE PROPOSED ACQUISITION**

23.     Headquartered in San Diego, Entropic is recognized for pioneering the MoCA® (Multimedia over Coax Alliance) home networking standard, inventing Direct Broadcast Satellite outdoor unit single-wire technology, and developing the industry's first set-top box SoC platform based on the ARM® processor with

advanced OpenGL graphics. Entropic has a rich history of innovation and deep expertise in radio-frequency, analog/mixed signal and digital signal processing technologies. Entropic's silicon solutions have been broadly deployed across major cable, satellite and fiber service providers.

24.     MaxLinear, Inc. is a leading provider of radio-frequency and mixed-signal semiconductor solutions for broadband communications applications.

25.     On February 3, 2015, Entropic and MaxLinear announced the Merger Agreement under which Entropic would be acquired by MaxLinear. Under the terms of the Merger Agreement, MaxLinear will acquire the Company in a cash and stock transaction in which the Company's stockholders would receive just $1.20 per share in cash and 0.2200 of a share of MaxLinear, Inc. common stock for each Entropic common share outstanding. Based on the closing price of MaxLinear, Inc. common stock on the day before the deal was announced, the value of the Proposed Acquisition consideration is $3.01 per Entropic share.

26.     The Proposed Acquisition will occur in multiple steps. Pursuant to the Merger Agreement, Merger Sub One will be merged with and into the Company and the Company will continue as the surviving corporation and as a wholly owned subsidiary of MaxLinear (the "First Step Merger"). In connection with the First Step Merger, all of the issued and outstanding shares of common stock of the Company, par value $0.001 per share, will be cancelled and converted into the right to receive consideration per share consisting of (a) an amount in cash equal to $1.20 (the "Cash Consideration") plus (b) 0.2200 of a share of MaxLinear, Inc.'s Class A common stock (the "Stock Consideration") plus (c) any cash payable in lieu of fractional shares of MaxLinear, Inc.'s Class A common stock otherwise issuable as Stock Consideration. As soon as practicable following the First Step Merger, MaxLinear will cause the Company to merge with and into Merger Sub Two (taken together with the First Step Merger, the "Merger"), with Merger Sub Two as the surviving entity.

27.   The press release announcing the Proposed Acquisition states in pertinent part:

### MaxLinear to Acquire Entropic, Reaffirms Its Fourth Quarter 2014 Guidance and Provides Outlook for First Quarter 2015

*Acquisition Expands MaxLinear's Strategic Presence in Broadband Access and Connectivity Markets*

*Acquisition Expected to be Immediately Accretive to Non-GAAP Earnings; Targeting Greater than $20 Million in Cost Savings in First Full Calendar Year Post-Close*

. . . MaxLinear, Inc. (or "MaxLinear"), a leading provider of integrated radio frequency ("RF") and mixed-signal integrated circuits ("ICs"), and Entropic Communications, Inc. (or "Entropic"), a world leader in semiconductor solutions for the connected home, today announced that they have signed a definitive agreement for MaxLinear to acquire Entropic. The boards of directors of both MaxLinear and Entropic have unanimously approved the transaction.

Entropic shareholders will receive (i) $1.20 per share in cash and (ii) 0.2200 shares of MaxLinear common stock for each Entropic common share outstanding. Based on MaxLinear's closing stock price on February 2, 2015, the merger consideration is valued at approximately $3.01 per Entropic share. The implied total transaction value is approximately $287 million and the implied enterprise value is $181 million, net of Entropic's cash balance as of December 31, 2014. Shareholders of MaxLinear and Entropic will own approximately 65% and 35%, respectively, post completion of the acquisition.

Headquartered in San Diego, Entropic is recognized for pioneering the MoCA® (Multimedia over Coax Alliance) home networking standard, inventing Direct Broadcast Satellite ("DBS") outdoor unit single-wire technology, and developing the industry's first set-top box SoC platform based on the ARM® processor with advanced OpenGL graphics. Entropic has a rich history of innovation and deep expertise in RF, analog/mixed signal and digital signal processing technologies. Entropic's silicon solutions have been broadly deployed across major cable, satellite, and fiber service providers.

The acquisition will add significant scale to MaxLinear's analog/mixed-signal business, expanding its addressable market and enhancing the strategic value of MaxLinear's offerings to its broadband and access partners, OEM customers, and service providers. MaxLinear sees immediate cross-selling opportunities and longer-term platform integration opportunities with Entropic's leading MoCA technology.

Along with broadening MaxLinear's presence in its existing markets, Entropic adds immediate scale and deep customer relationships in MaxLinear's most recent growth area of the satellite Pay-TV market. Entropic's design talents and portfolio of approximately 1,500 issued and

pending patents are highly complementary, and MaxLinear is uniquely positioned to capitalize on these assets.

"We are very excited about the opportunity to bring together two talented and largely complementary teams, as we increase our capabilities to solve the most difficult analog and mixed-signal RF challenges in Broadband markets," said Dr. Kishore Seendripu, CEO of MaxLinear. "We believe the scale and strategic benefits of a broader technology portfolio will enable us to accelerate our expansion into new markets more effectively. The financial benefits of the transaction should be immediately visible, as we expect non-GAAP earnings accretion in the first full quarter post-close."

Dr. Ted Tewksbury, Interim President and CEO of Entropic, commented, "I share Kishore's enthusiasm for this combination, which we believe maximizes value for Entropic's shareholders, employees and customers. These are two excellent companies in the industry, and I believe our stakeholders will benefit from the resources and scale that the combination will provide."

**Other Transaction and Financial Details**

As a result of the combination, MaxLinear anticipates it will achieve operating synergies in excess of $20 million in the first full calendar year post-close. Increased scale and projected cost savings are expected to lower combined non-GAAP operating expenses, generate significant operating margin expansion, and accelerate MaxLinear's timing to achieving its stated target operating model.

The transaction is expected to close in the second quarter of 2015 subject to approval by the shareholders of both companies, the receipt of regulatory approvals, and other customary closing conditions. MaxLinear will add Dr. Ted Tewksbury to its board of directors upon closing of the transaction.

Stifel is acting as exclusive financial advisor to MaxLinear. Barclays is acting as exclusive financial advisor to Entropic. Wilson Sonsini Goodrich & Rosati, P.C. is acting as counsel for MaxLinear and Cooley LLP is acting as counsel for Entropic.

28.    The Proposed Acquisition is the result of an unfair sales process designed to ensure that only MaxLinear has the opportunity to acquire Entropic. The Proposed Acquisition is being driven by the Company's Board and management, holders of 4.96% of the Company's outstanding stock. The Board and management sought out the Proposed Acquisition in order to secure increased liquidity for their illiquid holdings in the Company.

29.    From the Proposed Acquisition, Entropic's officers and directors will receive millions of dollars in special payments – not being made to ordinary

shareholders – for currently unvested stock options, performance units, and restricted shares, all of *which shall, upon completion of the transaction, become fully vested and exercisable*. The Company's senior management is also entitled to receive from the Proposed Acquisition millions of dollars more in change-of-control payments. Moreover, upon consummation of the Merger, the size of the MaxLinear board will be increased by one member to seven members, and defendant Tewksbury will be appointed to the MaxLinear board to fill the newly created vacancy.

30.     The Proposed Acquisition significantly undervalues Entropic. Based on MaxLinear, Inc.'s February 2, 2015 closing price, the Proposed Acquisition consideration is valued at approximately $3.01 per share, well below at least one analyst's estimated value of $5.00 per share, the median analyst price target of $3.81 per share and Entropic common stock's 52-week market price high of $4.80 per share. In fact, Entropic shares traded above the value of the Proposed Acquisition consideration for five years prior to July 2014.

31.     Moreover, on the same day the Proposed Acquisition was announced, Entropic announced its results from operations for its most recently reported fiscal quarter, and provided the following guidance to the market:

> "The Company remains on track to achieve the financial targets we outlined in November," said David Lyle, chief financial officer, Entropic. "For the first quarter, we expect *a sequential improvement in revenues* of two to three million dollars primarily because we are seeing *healthy orders* for STB SoC's used in HD-DTA's for several cable PayTV service providers. Based on historical ordering patterns, we believe *ordering will be heavier* in the first half of the year for HD-DTA's versus the second half of the year. On the bottom line, we expect first quarter earnings of 4 cents per share on a non-GAAP basis. We intend to end the quarter with greater than $100 million in cash and investments on the balance sheet."

32.     The Proposed Acquisition consideration also fails to reflect Entropic's value to MaxLinear. As a result of the deal, MaxLinear anticipates operating synergies in excess of $20 million in the first full calendar year post-close. Increased scale and projected cost savings are expected to lower combined non-GAAP operating expenses, generate significant operating margin expansion, and accelerate

MaxLinear's timing to achieve its stated operating model. The Proposed Acquisition will expand MaxLinear's customer base and allow it to cross-sell various products. As stated in the announcement of the Proposed Acquisition:

> The acquisition will add significant scale to MaxLinear's analog/mixed-signal business, expanding its addressable market and enhancing the strategic value of MaxLinear's offerings to its broadband and access partners, OEM customers, and service providers. MaxLinear sees immediate cross-selling opportunities and longer-term platform integration opportunities with Entropic's leading MoCA technology.
>
> Along with broadening MaxLinear's presence in its existing markets, Entropic adds immediate scale and deep customer relationships in MaxLinear's most recent growth area of the satellite Pay-TV market. Entropic's design talents and portfolio of approximately 1,500 issued and pending patents are highly complementary, and MaxLinear is uniquely positioned to capitalize on these assets.

33. The Merger Agreement also includes deal protection devices that will preclude a fair sales process for the Company and lock out competing bidders. These preclusive deal protection devices include:

(a) a "no-solicitation" provision that precludes Entropic from providing confidential Company information to, or even communicating with, potential competing bidders for the Company except under very limited circumstances;

(b) an illusory "fiduciary out" for the No-Shop provision that requires the Company to provide MaxLinear with advance notice before providing any competing bidder with any confidential Company information, even after the Board has determined that the competing bid is reasonably likely to lead to a superior proposal and that the Board is breaching its fiduciary duties by not providing the competing bidder with confidential Company information;

(c) an "information rights" provision that requires the Company to provide MaxLinear with confidential, non-public information about competing proposals which MaxLinear can then use to formulate a matching bid;

(d) a "matching rights" provision that requires Entropic to provide MaxLinear with the opportunity to match any competing proposal; and

1      (e)    a "termination fee" provision that requires Entropic to pay

2  MaxLinear $11.6 million if the Proposed Acquisition is terminated in favor of a

3  superior proposal.

4      34.    In sum, by agreeing to the Proposed Acquisition, each of the defendants

5  has breached their fiduciary duties of loyalty, due care, independence, candor, good

6  faith and fair dealing, and/or has aided and abetted such breaches.  Rather than acting

7  in the best interests of the Company and its shareholders, defendants spent substantial

8  effort tailoring the structural terms of the Proposed Acquisition to aggrandize their

9  own personal interests and to meet the specific needs of MaxLinear, which efforts will

10  eliminate the equity interest of Entropic's public shareholders.

11      35.    In essence, the Proposed Acquisition is the product of a hopelessly

12  flawed process that was designed to ensure the merger of Entropic with MaxLinear on

13  terms preferential to MaxLinear and defendants, and detrimental to plaintiff and

14  Entropic's shareholders.  Plaintiff seeks to enjoin the Proposed Acquisition.

### DEFENDANTS' FIDUCIARY DUTIES

16      36.    By reason of the Individual Defendants' positions with the Company as

17  officers and/or directors, said individuals are in a fiduciary relationship with the

18  Company, and owe the Company a duty of highest good faith, fair dealing, loyalty,

19  and full, candid and adequate disclosure.

20      37.    In any situation where the directors of a publicly traded corporation

21  undertake a transaction that will result in either (i) a change in corporate control or (ii)

22  a break-up of the corporation's assets, the directors have an affirmative fiduciary

23  obligation to obtain the highest value reasonably available for the corporation's

24  shareholders, and if such transaction will result in a change of corporate control, the

25  shareholders are entitled to receive a significant premium.  To diligently comply with

26  these duties, the directors may not take any action that:

27      (a)    adversely affects the value provided to the corporation's

28  shareholders;

1          (b)    will discourage or inhibit alternative offers to purchase control of

2  the corporation or its assets;

3          (c)    contractually prohibits them from complying with their fiduciary

4  duties;

5          (d)    will otherwise adversely affect their duty to search and secure the

6  best value reasonably available under the circumstances for the corporation's

7  shareholders; and/or

8          (e)    will provide the directors with preferential treatment at the expense

9  of, or separate from, the public shareholders.

10     38.    In accordance with their duties of loyalty and good faith, the Individual

11  Defendants, as directors and/or officers of Entropic, are obligated to refrain from:

12          (a)    participating in any transaction where the directors' or officers'

13  loyalties are divided;

14          (b)    participating in any transaction where the directors or officers

15  receive or are entitled to receive a personal financial benefit not equally shared by the

16  public shareholders of the corporation; and/or

17          (c)    unjustly enriching themselves at the expense or to the detriment of

18  the public shareholders.

19     39.    Plaintiff alleges herein that defendants, separately and together, in

20  connection with the Proposed Acquisition, violated and/or aided and abetted in the

21  violation of fiduciary duties owed to Entropic and its shareholders, including the

22  duties of loyalty, good faith, candor, due care and independence.  The Individual

23  Defendants stand on both sides of the transaction, are engaging in self-dealing and

24  abusing their control of Entropic, and are obtaining for themselves personal benefits,

25  including personal financial benefits, to the detriment of the Company.  Moreover, as

26  a result of these breaches of fiduciary duties and the aiding and abetting therein,

27  neither plaintiff nor the Class will receive adequate or fair value for their Entropic

28  common stock in the Proposed Acquisition.

40.     Because defendants have breached their duties of due care, loyalty and good faith in connection with the Proposed Acquisition, and/or have aided and abetted therein, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

### DERIVATIVE AND DEMAND ALLEGATIONS

41.     Plaintiff brings this action derivatively in the right and for the benefit of Entropic to redress injuries suffered, and to be suffered, by Entropic as a direct result of the breaches of fiduciary duty by the Individual Defendants.

42.     Plaintiff will adequately and fairly represent the interests of Entropic and its shareholders in enforcing and prosecuting their rights.

43.     Plaintiff is and was an owner of the stock of Entropic during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

44.     Plaintiff has not made a demand on the Board to file suit for the breaches of fiduciary duty alleged herein because such a demand would be a futile and useless act that would likely lead to Entropic suffering irreparable injury, particularly for the following reasons:

(a)     If plaintiff is required to make demand on the Board, Entropic would suffer irreparable injury were the Proposed Acquisition complained of herein consummated;

(b)     Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein;

(c)     Each member of the Board has been named as a defendant to this lawsuit;

(d)     In order to bring this suit, all of the directors of Entropic would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(e)     The acts complained of constitute violations of the fiduciary duties owed by Entropic's officers and directors and these acts are incapable of ratification;

(f)     Any suit by the directors of Entropic to remedy these wrongs would likely expose the Individual Defendants and Entropic to further civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(g)     Each member of the Entropic Board is, directly or indirectly, the recipient of remuneration paid by the Company, including benefits, stock options, and other emoluments by virtue of their Board membership and control over the Company, the continuation of which is dependent upon their cooperation with the other members of the Board, and their participation and acquiescence in the wrongdoing set forth herein, and are therefore incapable of exercising independent objective judgment in deciding whether to bring this action;

(h)     Because of their association as directors of the Company and their positions as present or former employees, the directors are dominated and controlled so as not to be capable of exercising independent objective judgment; and

(i)     Entropic's current and past officers and directors are protected by directors' and officers' liability insurance against personal liability for their breaches of fiduciary duty alleged in this Complaint, which they caused the Company to purchase for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Entropic.  However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Individual Defendants in this case contain provisions which eliminate coverage for any action brought directly by Entropic against the Individual Defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Entropic, there would be no directors' and officers' insurance

1   protection and thus, this is a further reason why they will not bring such a suit. On the

2   other hand, if the suit is brought derivatively, as this action is brought, such insurance

3   coverage exists and may provide a basis for the Company to effectuate recovery. If

4   there is no coverage pursuant to directors' and officers' liability insurance, the

5   defendant directors will not cause Entropic to sue them, since they will face a large

6   uninsured liability.

7                          **CLASS ACTION ALLEGATIONS**

8          45.     Plaintiff brings this action individually and as a class action pursuant to

9   Federal Rule of Civil Procedure 23 on behalf of all public holders of Entropic

10  common stock who are being and will be harmed by defendants' actions described

11  below (the "Class"). Excluded from the Class are defendants herein and any person,

12  firm, trust, corporation, or other entity related to or affiliated with any defendant.

13         46.     This action is properly maintainable as a class action under Federal Rule

14  of Civil Procedure 23.

15         47.     The Class is so numerous that joinder of all members is impracticable.

16  According to Entropic's U.S. Securities and Exchange Commission filings, as of

17  October 31, 2014, there were more than 90 million shares of Entropic common stock

18  outstanding.

19         48.     There are questions of law and fact that are common to the Class and that

20  predominate over questions affecting any individual Class member. The common

21  questions include, *inter alia*, the following:

22             (a)    whether defendants have breached their fiduciary duties of

23  undivided loyalty, independence, or due care with respect to plaintiff and the other

24  members of the Class in connection with the Proposed Acquisition, and/or are aiding

25  and abetting therein;

26             (b)    whether defendants are engaging in self-dealing in connection with

27  the Proposed Acquisition, and/or are aiding and abetting therein;

28

(c)     whether defendants have breached their fiduciary duty to secure and obtain the best value reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(d)     whether defendants are unjustly enriching themselves and other insiders or affiliates of Entropic and/or MaxLinear, and/or are aiding and abetting therein;

(e)     whether defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, candor and fair dealing, and/or are aiding and abetting therein;

(f)     whether defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets, and/or have aided and abetted therein;

(g)     whether the Proposed Acquisition compensation payable to plaintiff and the Class is unfair and inadequate; and

(h)     whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

49.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

50.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

51.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

52.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

53.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Derivative Claim Against the Individual Defendants for Breach of Fiduciary Duties

54.     Plaintiff incorporates by reference and realleges each and every allegation set forth above.

55.     The Individual Defendants have violated fiduciary duties of care, loyalty, candor, good faith, and independence owed to Entropic and have acted to put their personal interests ahead of the interests of Entropic.

56.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, have violated their fiduciary duties by entering into a merger transaction with MaxLinear without regard to the fairness of the transaction to Entropic.

57.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor, and independence owed to Entropic because, among other reasons:

(a)     They failed to conduct a full and fair sales process for Entropic, thereby failing in their duty to properly maximize the value of Entropic common shares; and

(b)     They ignored or did not protect against the numerous conflicts of interest resulting from their various interrelationships and material insider benefits secured in the Proposed Acquisition.

58.   Because the Individual Defendants dominate and control the business and corporate affairs of Entropic, and are in possession of private corporate information concerning Entropic's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Entropic which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

59.   By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Entropic.

60.   The Individual Defendants are engaging in self dealing, are not acting in good faith toward Entropic, and have breached and are breaching the fiduciary duties owed to Entropic.

61.   Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to the Company, and may consummate the Proposed Acquisition without providing the Company and its shareholders a full and fair sales process.

62.   As a result of the Individual Defendants' actions, the Company has and will be irreparably harmed.

63.   The Company has no adequate remedy at law.

## COUNT II

**Class Claim for Breach of Fiduciary Duties and Aiding and Abetting Against All Defendants**

64.   Plaintiff repeats and realleges each allegation set forth herein.

65.   The Individual Defendants, aided and abetted by MaxLinear, Inc., Merger Sub One and Merger Sub Two, have knowingly or recklessly and in bad faith violated their fiduciary duties of care, loyalty, candor, good faith, and independence

1   owed to the public shareholders of Entropic and have acted to put their personal
2   interests ahead of the interests of Entropic's shareholders.

3      66.   By the acts, transactions and courses of conduct alleged herein,
4   defendants, individually and acting as a part of a common plan, knowingly or
5   recklessly and in bad faith are attempting to unfairly deprive plaintiff and the other
6   members of the Class of the true value of their investment in Entropic.

7      67.   The Individual Defendants have knowingly or recklessly and in bad faith
8   violated their fiduciary duties by entering into the Proposed Acquisition without
9   regard to the fairness of the transaction to Entropic's shareholders. MaxLinear, Inc.,
10  Merger Sub One and Merger Sub Two aided and abetted the Individual Defendants'
11  breaches of fiduciary duties owed to plaintiff and the other holders of Entropic stock.

12     68.   As demonstrated by the allegations above, the Individual Defendants
13  knowingly or recklessly and in bad faith failed to exercise the care required, and
14  breached their duties of loyalty, good faith, candor and independence owed to the
15  shareholders of Entropic because, among other reasons, they failed to ensure a fair
16  process and maximization of shareholder value.

17     69.   Because the Individual Defendants dominate and control the business and
18  corporate affairs of Entropic, and are in possession of private corporate information
19  concerning Entropic's assets, business and future prospects, there exists an imbalance
20  and disparity of knowledge and economic power between them and the public
21  shareholders of Entropic which makes it inherently unfair for them to pursue any
22  proposed transaction wherein they will reap disproportionate benefits to the exclusion
23  of maximizing stockholder value.

24     70.   By reason of the foregoing acts, practices and course of conduct, the
25  Individual Defendants have knowingly or recklessly and in bad faith failed to exercise
26  ordinary care and diligence in the exercise of their fiduciary obligations toward
27  plaintiff and the other members of the Class.

28

71.     As a result of the actions of defendants, plaintiff and the Class have been and will be irreparably harmed.

72.     Unless the Proposed Acquisition is enjoined by the Court, defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the other members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition's terms, and will not supply to Entropic's shareholders sufficient information to enable them to make informed decisions regarding the tender of their shares in connection with the Proposed Acquisition, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

73.     Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in Entropic's favor and in favor of plaintiff and the Class and against defendants, as follows:

A.     Declaring that plaintiff may maintain Count I derivatively and that plaintiff is an adequate representative on behalf of the Company;

B.     Declaring that defendants have breached their fiduciary duties owed to Entropic;

C.     Declaring that Count II is properly maintainable as a class action;

D.     Declaring that defendants have breached their fiduciary duties owed to Entropic's shareholders;

E.     Declaring and decreeing that the Proposed Acquisition was entered into in breach of defendants' fiduciary duties and is therefore unlawful and unenforceable;

F.     Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and

1  until the Board adopts and implements a procedure or process to obtain the highest

2  possible value for shareholders;

3      G.     Directing the Individual Defendants to exercise their fiduciary duties to

4  obtain a transaction that is in the best interests of Entropic and its shareholders and to

5  refrain from entering into any transaction until the process for the sale or merger of

6  the Company is completed and the highest possible value is obtained;

7      H.     Rescinding, to the extent already implemented, the Merger Agreement or

8  any of the terms thereof;

9      I.     Awarding plaintiff the costs and disbursements of this action, including

10 reasonable attorneys' and experts' fees; and

11      J.     Granting such other and further equitable relief as this Court may deem

12 just and proper.

### JURY DEMAND

14     Plaintiff demands a trial by jury.

15 DATED:  February 25, 2015              ROBBINS GELLER RUDMAN
16                                          & DOWD LLP
                                         DAVID T. WISSBROECKER
                                         EDWARD M. GERGOSIAN

18                                         */s/ David T. Wissbroecker*
19                                         DAVID T. WISSBROECKER

20                                         655 West Broadway, Suite 1900
21                                         San Diego, CA  92101
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

22                                         LAW OFFICES OF MARC S. HENZEL
23                                         MARC S. HENZEL
                                         431 Montgomery Avenue, Suite B
24                                         Merion Station, PA  19066
                                         Telephone:  610/660-8000
25                                         610/660-8080 (fax)

26                                         Attorneys for Plaintiff

27

28

1

## VERIFICATION

2

3   I, Anthony Badolato, hereby verify that I am familiar with the allegations in the

4   Verified Shareholder Derivative and Class Action Complaint for Breach of Fiduciary

5   Duties ("Complaint"), and that I have authorized the filing of the Complaint, and that

6   the foregoing is true and correct to the best of my knowledge, information and belief.

7   DATED:    2/23/15

8                                                   ANTHONY BADOLATO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28